BELRIDGE OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6296.   Promulgated March 22, 1928.

*Ralph W. Smith*, *Esq.*, and *Claude I. Parker*, *Esq.*, for the petitioner.

*J. D. Foley*, *Esq.*, for the respondent.

134

OPINION.

VAN FOSSAN: The petitioner having abandoned the assignment of error relative to special assessment of its profits taxes under sections 327 and 328 of the Revenue Act of 1918, the issues requiring our determination are (1) the actual cash value at the date of acquisition of an option upon certain land paid in to the petitioner for capital stock, and (2) the year in which losses were sustained upon certain oil wells. As to the second of these issues petitioner claimed losses aggregating $216,743.36 on account of dry wells, which it alleges were abandoned, and the entire loss sustained in 1920. The respondent concedes the total amount of the loss sustained, but determined that five of the wells were abandoned, and the losses thereon, aggregating $91,601.14, sustained in years other than 1920. The respondent disallowed the losses on these five wells as a deduction from gross income for 1920 and allocated the same to other years, which action the petitioner alleges was in error. At the hearing the petitioner waived its assignment of error as to three of the disallowed wells, leaving for determination only the year in which losses, in the amounts of $29,250.67 and $45,825.41, were sustained upon wells No. 18 and No. 22, respectively.

It is alleged in the petition and admitted by the answer that the " taxes in controversy are income and profits taxes for the years 1917 to 1920, inclusive." It appears, however, that the respondent determined overassessments for the years 1918 and 1919 in the respective amounts of $6,127.99 and $1,190.81, and determined deficiencies only as to the years 1917 and 1920. This Board has jurisdiction only as to those years for which the Commissioner has determined deficiencies or denied claims in abatement, and accordingly, the petitioner's tax liability for the years 1918 and 1919 is not before us on this appeal. *R. P. Hazzard Co.*, 4 B. T. A. 150; *Cornelius Cotton Mills*, 4 B. T. A. 255; and *Stromberg Electric Co.*, 8 B. T. A. 1170.

In considering the question of the actual cash value of the option, we turn our attention first to the written agreement dated January 5, 1911, which is set out at length in the findings of fact. From the terms of this agreement certain facts are evident. The agreement was the result of negotiations between parties apparently dealing at arm's length; they were dealing with prospective oil lands and by the agreement provided for its exploration; they fixed a price of

$25,000 as the value of the option and the privilege of exploration; they also fixed a price of $1,028,198.67 to be paid for the lands if oil or gas was found and the holder of the option elected to purchase; this figure of $1,028,198.67 represents the price at which the proven oil land was to be sold; the parties anticipated and provided for the assignment of the agreement to a corporation to be organized.

In our opinion, under the circumstances of this case, this agreement is entitled to great weight. It was executed in the light of such knowledge as the parties possessed about the character and value of the land. It does not appear that the parties were unadvised of any of the elements of its value, nor does it appear that any new proof of value was discovered between the giving of the option and its assignment to petitioner. The fact that one Van Slyke sometime in 1910 discovered an outcrop of oil sand on the property is not shown to be controlling. This discovery preceded the giving of the option to Hole and for aught that appears the existence of this outcrop may have been known to Hole when he acquired the option. The evidence does not indicate that at the time of the assignment petitioner had any greater knowledge of the oil-bearing properties of the land than had Hole when he took the option. When petitioner acquired the option the land was still unproven. No wells had been completed nor had the presence of oil in commercially profitable quantities been otherwise proven.

Oil and gas are of a fugitive nature. They hide in the deep recesses of the earth where the eye of man may not penetrate. The sorry experience of thousands of investors proves that their exact location may seldom, if ever, be divined with precision and certainty. Not every oil seepage or outcrop of oil sand indicates the presence of oil in profitable quantities. A few yards only may separate the gusher from the dry hole. Of a truth, the test of an oil property is the drilling thereof.

Petitioner undertook to prove by opinion evidence that the land had a value of from $2,000,000 to $5,000,000 at the basic date. Assuming this value of the lands, it is argued that the value of the option must be the difference between the above figure and the price fixed in the agreement, $1,028,198.67. Were we to accept this theorem as sound we would nevertheless be unable to find the value contended for by petitioner. The opinion testimony of these witnesses, with the several weaknesses apparent in the testimony itself, is not sufficient to overcome the weight that must be given to the price fixed between the parties to the agreement of option and sale. The owner of the land and one of petitioner's incorporators met in what appears to be an arm's length transaction and fixed a price of $25,000 as the value of the option and a price of $1,028,198.67 as the sale price of the

land if, after exploration, the holder of the option elected to buy the property. The contract evidences deliberation on its face. The parties were awake to the possibility of discovering oil or gas and presumably acted reasonably in fixing the sale price. In no respect did petitioner show the agreement to have been unique or unrepresentative. It is not contended that Hole drove a sharp bargain or concealed any facts known to him from an unsuspecting seller. Although Hole appeared as a witness, no fact was elicited from him which in any way detracted from the weight properly to be given the price fixed in the agreement as the best evidence of the value of the land on January 5, 1911. Such evidence is more persuasive and is entitled to greater weight than the opinions of witnesses, not eminently qualified, which opinions were formulated years after the valuation date and after the property had proven to be a rich field. It not being demonstrated that there was a change in the value of the property between January 5, 1911, and January 25, 1911, it follows that the value on the former date, as fixed in the agreement, is also the value on the later date. Thus, accepting petitioner's theory of proof, the evidence in the case does not prove a value of the land as of January 25, 1911, in excess of that fixed by the agreement of option and sale of January 5, 1911.

We find no error in the determination of respondent that the option was worth on January 25, 1911, only what was paid for it on January 5 of the same year.

There remains only the question of the year in which wells Nos. 18 and 22 were abandoned, the respondent conceding the right of petitioner to deduct the cost of drilling the wells in the years in which they were abandoned.

The drilling of these wells was begun prior to 1920 but was not concluded until some time in 1920. Before the close of the year petitioner determined that the wells were worthless and thereupon plugged and cemented the wells, pulled the casing and removed the rig on No. 18 and pulled the casing on No. 22, all within the year 1920. Whether or not there has been an abandonment of an oil well depends upon the intention of the owner, coupled with the act of abandonment, both to be ascertained and determined from all the surrounding facts and circumstances. In this case the evidence establishes that petitioner intended to, and did, abandon wells Nos. 18 and 22 in the year 1920. The coincidence in that year of the intention to abandon and the acts showing actual abandonment is determinative. The abandonment occurred in the year 1920.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*