I. FRANK SONS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41431. Promulgated February 3, 1931.

*Chas. L. Apfel, Esq.*, for the petitioner.
*J. A. Lyons, Esq.*, for the respondent.

### OPINION.

TRAMMELL: This is a proceeding for the redetermination of deficiencies in income tax for the years 1924 and 1925 in the amounts of $591.40 and $3,878.32, respectively. The petitioner is a New York corporation, with its principal place of business in New York City.

The deficiency letter was mailed to the petitioner on September 22, 1928, asserting the deficiencies above mentioned for the years 1924 and 1925.

An original petition was filed with the Board on November 12, 1928, appealing from the determination of the deficiency for the year 1925 only, and alleging errors in respect to the deficiency for said year only. Thereafter, on May 26, 1930, the petitioner filed an amended petition appealing from the determination of the deficiencies for both the years 1924 and 1925, and in said amended petition alleged errors relating to the determination of both deficiencies. At the hearing, the petitioner abandoned all issues relating to the deficiency for 1924, but no motion was made to dismiss the appeal as to said year. Under these circumstances, the amended petition constituted a new and different appeal as to the deficiency for 1924, and since the amended pleading was not filed within the period provided in the statute (section 274, Revenue Act of 1926), we have no jurisdiction to redetermine the deficiency for that year. *J. W. Teasdale & Co.*, 5 B. T. A. 1244; *The Peruna Co.*, 11 B. T. A. 1180. Accordingly, this proceeding, in so far as it involves the deficiency for 1924, will be dismissed for lack of jurisdiction.

In respect to the deficiency for 1925, the petitioner complains that the respondent erred in disallowing deductions claimed (a) for a bad debt in the amount of $15,000, (b) for the value of furniture and fixtures abandoned in the taxable year in the amount of $3,510.37, and (c) for a reasonable addition to a reserve for bad debts.

The first and third issues are so closely related that they will be considered together. As to both of these issues, the evidence offered by the petitioner is very meager and unsatisfactory, and the issues

are not clearly defined in the pleadings. It appears, however, that the petitioner claimed a composite deduction consisting in part of a specific bad debt charged off and in part of a reserve, or addition to a reserve, for bad debts.

On line 18 of its return, the petitioner took as a deduction "Bad debts (From Schedule G) $16,827.51." Schedule G in the return was not filled out, and consequently we can make no analysis of the amount from information which should have been shown thereon. The petitioner contends that this amount consisted of a specific bad debt in the amount of $15,000 and an addition to its reserve for bad debts. The petitioner further asserts that it set up an addition to its reserve in the amount of $6,671.27, of which the respondent disallowed $1,393.85, in addition to the $15,000 bad debt, but that in some unexplained manner the said addition to the reserve for bad debts was not in fact deducted from gross income. By disallowing only $1,393.85 of the $6,671.27 originally set up, the petitioner says the respondent thus determined that the amount of $5,277.42 constituted a reasonable addition to its reserve. Therefore, the petitioner now claims that it should have a deduction of $15,000 for the bad debt, and also a deduction of $5,277.42 for an addition to its reserve for bad debts.

The petitioner's balance sheet at the end of the taxable year, set out in Schedule K of the return, shows a "Reserve for bad debts" in the amount of $6,671.27, which would indicate that this amount represents the total reserve set aside for bad debts down to the end of the taxable year and not an addition to the reserve made in the taxable year. The said Schedule K does not show the petitioner's balance sheet at the beginning of the taxable year, which should have been shown, and hence we can not determine from an analysis of the balance sheets the amount of the addition to the reserve, if any. That the amount of $6,671.27 is in fact the accumulated reserve, and not an addition to the reserve made in 1925, is further borne out by the deficiency letter, which indicates that the addition to the reserve for 1924 was $1,032.69 and for 1925, $1,393.85, both of which amounts were disallowed by the respondent with the following explanation:

The Revenue Act of 1921 provides that bad debts may be treated in either of two ways, (1) by a deduction of debts ascertained to be worthless in whole or in part, or (2) by a deduction from income of an addition to a reserve for bad debts. Further, the method elected must be used unless permission to change to the other method is granted by the Commissioner.

In no event is the petitioner entitled to deduct from income each year the total amount of its accumulated reserve for bad debts, which appears to be substantially what it is seeking to do here, but

it is entitled to deduct from income for the taxable year only a reasonable addition to the reserve, provided it elected at the proper time to take its bad debt deductions by the reserve method, or subsequently obtained permission from the Commissioner to change to such method. The petitioner has wholly failed to show either fact, and since the respondent disallowed additions to the petitioner's reserve for 1924 and 1925, we can not assume in the absence of proof that the petitioner is entitled to deductions by the reserve method. Nor is it entitled to take its deductions by both the charge-off and reserve methods in the same year. Section 234 (a) (5), Revenue Act of 1921. See also *Kay Manufacturing Co.*, 18 B. T. A. 753; *Ewald & Co.*, 18 B. T. A. 1130. The respondent's action on the third issue is approved.

Whether the petitioner is entitled to the deduction of $15,000 for the alleged specific bad debt, under the first issue, depends upon whether or not (a) the debt was ascertained to be worthless and (b) was charged off, in the taxable year. Section 234 (a) (5), *supra*. The burden is upon the petitioner to prove these facts. To establish that the debt was charged off in the taxable year, the petitioner offered the testimony of its president as follows:

Q. Was this sum of $15,000 returned or paid back in 1925 by William Frank to your firm?
A. No.
Q. Was it ever repaid since that time?
A. No.
Q. Was that amount charged off on the books as a bad debt in 1925?
A. I think so.

   *       *       *       *       *       *       *

Q. And you did charge it off as a bad debt in 1925?
A. Yes.

The effect of this testimony as to the charge-off of the alleged bad debt is impaired by the fact that this same witness testified that the undepreciated balance of the cost of certain furniture and fixtures, to which reference will be made under the second issue, was also charged off in the taxable year, yet the balance sheet at the end of that year shows affirmatively that this item was not charged off, but remained in the assets. The inaccuracy of the above testimony is further indicated by the following statement contained in the petitioner's brief:

It was not and can not be contended by the examining officer that the *corporation* had released this indebtedness by some writing. If this had been so, the marking off of the said indebtedness would appear in the books or records kept by the corporation. The examining officer does not state nor could he, that the records of the corporation contained any entry showing the marking off of this debt.

And, lastly, the petitioner's balance sheet at the end of the taxable year shows "Loans due from other than officers, $37,874.86," which amount may well have included the $15,000 loan in question. A worthless debt is "charged off" within the meaning of the taxing statute when it is effectively eliminated from the corporation's assets. *Ewald & Co., supra.* The petitioner has not shown that the debt which seeks to deduct here was so eliminated, and from the conflicting evidence in the record before us, we can not say that the debt was charged off in the taxable year within the purview of section 234 (a) (5), *supra.*

We would be impelled, on yet another ground, to deny the deduction claimed for the alleged bad debt. The petitioner's president testified on direct examination that this loan was made to his brother by the corporation in 1925, at which time the debtor's financial condition "was all right" and that later in the same year when he, the witness, endeavored to collect the loan from his brother, it was found that the latter was insolvent and unable to pay, with unsatisfied judgments on record against him. On cross-examination, however, it was shown that the unsatisfied judgments against the debtor were rendered in 1923, approximately two years prior to the making of the loan in question.

No facts are disclosed by the record which would indicate that the debt was in fact not worthless when the loan was made, or that the debtor became insolvent between the time of the loan and the end of the taxable year. Under these circumstances, there could have been no reasonable ascertainment that the debt became worthless in the taxable year. The action of the respondent in disallowing the deduction claimed is approved.

The second issue relates to the deduction taken on line 20 of the petitioner's return for "depreciation" in the amount of $7,784.38, of which the respondent disallowed $7,000. The petitioner now contends that it is entitled to the deduction of the additional amount of $3,510.37. The evidence shows that during the taxable year 1925 the petitioner moved its business from 32nd Street to 36th Street in New York City. It abandoned certain furniture and fixtures at the old location because they could not be moved without violating the fire regulations. The unexhausted investment in these fixtures, carried on the books at $3,510.37, was a total loss. However, the balance sheet at the end of the year shows a reserve for depreciation of $1,404.07, which included $561.93 applicable to the abandoned fixtures for the taxable year, so that the undepreciated cost at the end of the year was $2,948.44, from which must be deducted the depreciation claimed on the return and allowed by the respondent, in the amount of $784.38. The petitioner is, therefore, entitled to deduct from

income for 1925 the net additional amount of $2,164.06 on account of the loss resulting from the abandonment of its furniture and fixtures. The deficiency for 1925 will be redetermined accordingly.

*Judgment will be entered under Rule 50.*