Ersel H. BEUS and Anna Beus, W. J. Beus, and Leone Beus, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15957.

United States Court of Appeals Ninth Circuit.

Nov. 3, 1958.

---

Myron E. Anderson, Boise, Idaho, for petitioners.

Charles K. Rice, Asst. Atty. Gen., Carolyn R. Just, Grant W. Wiprud, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before FEE and HAMLIN, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

At all material times, petitioners (hereinafter "taxpayers") Ersel H. Beus

and Anna Beus have been and are husband and wife residing at Nyssa, Oregon, and for the year 1952 filed their joint income tax return with the Director of Internal Revenue for the District of Oregon. Also, at such times, petitioners (hereinafter "taxpayers") W. (William) J. Beus and Leone Beus have been and are husband and wife residing at the same place, and for the same year filed their joint income tax return with the same Internal Revenue Director. Said Ersel and W. J. Beus are brothers, and at all material times have been partners operating the partnership farming business of Beus Bros. on two farms located not far apart in different communities on opposite sides of the Snake River, one of such farms being in Payette County, Idaho and the other in Malheur County, Oregon.

In those 1952 tax returns, taxpayers claimed deductions for that year for such husbands' partnership business losses, (1) $20,000 for alleged abandonment that year of irrigation facilities connected with their Idaho farm and (2) $15,000 for alleged rental payments that year on their Oregon farm. In 1955 the Acting Commissioner, because of dissatisfaction with those deductions, notified taxpayers of deficiencies in their 1952 income tax payments in the following amounts: Ersel H. Beus and wife, $5,769.46 plus tax addition of $519.86, and W. J. Beus and wife, $11,920.46 plus tax addition of $1,791.62, and plus a penalty levied pursuant to § 293(a) I.R.C.1939 [1] by the Commissioner against W. J. Beus and wife because of their alleged negligent handling of their income tax deductions related to the Oregon farm operations.

Thereafter the taxpayers and their wives sought and obtained the Tax Court's redetermination of those deficiencies, but from adverse decisions of

[1]. § 293(a) I.R.C.1939, provides:
"§ 293. Additions to the tax in case of deficiency.
"(a) Negligence. If any part of any deficiency is due to negligence or intentional disregard of rules and regulations

* * *, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, * * *." 26 U.S.C.A. § 293.

that Court, taxpayers now seek this review by this Court, which has such review jurisdiction under § 7482 I.R.C. 1954.[2]

The Tax Court found (or the parties admitted):

■ 1. As to the Idaho Farm, that it comprised 200 acres consisting of two contiguous tracts of 80 and 120 acres respectively, the possession and use of which was taken by taxpayers on or about January 20, 1952, when they paid $5,000 as part payment and paid the $56,500 balance of the total $61,500 purchase price on December 21, 1953 upon delivery of title to taxpayers; that taxpayers also acquired with the purchase of that property a water right to approximately 185 acre-inches of irrigation water and 185 shares of a farmers cooperative irrigation company (hereafter called Co-op.), one of such shares representing the right to one of such acre-inches of water, subject to future periodic assessments against the shares by Co-op. for necessary springtime servicing of its canal;

That taxpayers' Idaho land is in arid country and has only a nominal value without adequate irrigation water; that one acre-inch of water per irrigation season is sufficient for taxpayers' farming operations, and approximately 185 acres of their land were under cultivation in 1952; that the Beus Bros. partnership was formed and took over possession and operation of the Idaho land about the time it was acquired by the taxpayers;

That the Co-op.'s main canal is about two miles from taxpayers' property and a headgate channels water from the canal into an irrigation ditch, herein called the Lateral, extending to taxpayers' property after passing through other property not owned by them; that, although they did not make a prior inspection of the irrigation system, taxpayers' land was subject to slides and washouts and that Lateral, constructed many years before 1952, was in disrepair when taxpayers acquired the land, but was receiving waste water from land on ground higher than the taxpayers' land; that the Lateral is maintained by owners of the land along its route wishing to obtain water from it, and the Co-op. is not required to assist in such maintenance;

That taxpayer Ersel Beus managed the Idaho property for the partnership, and he, soon after the partnership took possession, began cultivating the land and making preparations for planting the coming season's crops; that during that work he observed a neighboring farmer's irrigation well drilling operations and their favorable results near the partnership property, and, after doing so, investigated the Lateral and discovered its disrepair; that both the taxpayers Ersel and W. J. Beus then decided to drill one irrigation well on their property before repairing the Lateral, and this first well was completed in May, 1952, and furnished about one-third of the irrigation water needed by their partnership's Idaho farming operation; that thereafter they drilled a second irrigation well which they completed in June, 1952; that after the second well was completed they decided to irrigate their farm principally from wells rather than the Lateral connected with Co-op.'s irrigation system, and added a third well which was completed in July, 1952; that the total amount of irrigation water from the three wells was approximately 180 acre-inches, but in 1952, 1953 and 1954 the taxpayers received some water from the Lateral and used that as supplemental irrigation water on a part of such Idaho land;

2. § 7482 I.R.C.1954, provides:
    "§ 7482. Courts of review.
    "(a) Jurisdiction.—The United States Courts of Appeals shall have exclusive jurisdiction to review the decisions of the Tax Court, * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, * * *" 26 U.S.C.A. § 7482, and further, in effect, providing for review by the U. S. Supreme Court upon certiorari.

That in 1952 and 1953 taxpayer Ersel Beus serviced part of the Lateral which during the hearing before the Tax Court was still carrying some water; that irrigation assessments by Co-op. against taxpayers' 185 shares of Co-op. Capital stock were paid by taxpayers' partnership in 1952, 1953 and 1954, and on January 20, 1953 taxpayers filed with the Idaho Reclamation Department an application to appropriate subterranean state waters from wells for irrigation and domestic purposes specifying that "This filing is supplemental to existing water rights, however applicants intend to abandon existing water rights as soon as wells prove adequate."

That, respecting the Idaho farm land operations, the taxpayers' partnership income tax return for 1952 claimed a deduction of $20,000 for abandonment loss in that year of an "irrigation sys. [system]", and that same deduction was reflected in the distributive shares of the partnership net income and in the net income of the partners.

Upon the foregoing facts the Tax Court found that taxpayers did not abandon the irrigation system in 1952, disallowed the claimed deduction therefor, and assessed an additional amount of tax on account of such disallowed deduction;

■ 2. As to the Oregon Farm, that a written contract dated September 2, 1952 covering a two-year period and entitled "Farm Lease—With Option to Buy" covering about 150 acres in Malheur County, Oregon was executed by one Pederson and others as "Lessors" and by taxpayer W. J. Beus acting for the Beus Bros. partnership as "Lessees" for "cash rental" payment of $15,000, of which $6,500 was payable September 2, 1952 and $8,500 on or before December 31, 1952, payable whether or not " * * the lessees exercised the option to buy the said property", and further providing that the "lessors" granted the "lessees" the option to purchase the real property and water rights for $31,500 payable at $5,000 per year for six years

starting January 2, 1953 with the final payment of $1,500 on January 2, 1959;

That this property had been listed for sale with real estate dealers for about a year before the execution of that contract at a selling price of $47,500 and had never been listed for rental purposes; that subsequent to such contract execution and during September, 1952, Pederson at the instance of William J. Beus agreed to an interlineation in the contract which changed the words "Cash, the sum of $5,000.00, not later than January 2, 1953" to read "Cash loan of $5,000.00, not later than January 2, 1953"; that pursuant to such contract W. J. Beus paid $6,500 to the "lessors" on September 2, 1952, the date of the contract, and $1,000 was paid on November 1, 1952, such $1,000 being treated by the parties as an advance payment of part of the $5,000.00 option payment which under the contract was payable not later than January 2, 1953; that other payments made on that contract were 12/29/52, $8,500, and 1/2/53, $4,000, and between 1/53 and 3/2/53, $26,500, that "lessees" took possession of the property on November 15, 1952 and reimbursed the "lessors" for the pro rata portion of the Oregon State property taxes after that date which were levied for the fiscal year ending June 30, 1953;

That, on a February 19, 1953 loan application, taxpayers stated that the Oregon property was purchased by them in 1952 for $46,500; that thereafter the property was conveyed to taxpayers and Beesley and his wife by warranty deed dated March 2 and 3, 1953; that the market value of the property at all material times was $46,500, a sum equal to the aggregate sum of all payments made by lessees under the above mentioned contract; that on the 1952 income tax return of taxpayer W. J. Beus and his wife the $6,500 contract payment was claimed as a deduction for rent, and on the partnership return for that year, the $8,500 mentioned above was claimed as a deduction for rent and such deduction is reflected in the net income of taxpayers

and reported in their respective returns for 1952.

The Tax Court found that by the foregoing contract for rental payments, the taxpayers intended to acquire and while executing the contract did acquire an equity in the property, and, therefore, held that the payments in question did not constitute rental payments deductible as business expenses within the meaning of § 23(a) (1) (A) I.R.C.1939.[3]

That taxpayers W. J. Beus and wife also claimed in their 1952 income tax return a deduction for non-farming operations loss in the sum of $5,090.27 in connection with a purported sale of livestock that year, but the Commissioner disallowed this claimed deduction because he found such sale was not in fact made in 1952, that at least a part of the tax deficiency of this taxpayer and wife is due to their negligence or intention to disregard the applicable rules and regulations, and that the negligence assessment by the Commissioner was proper.

Upon the foregoing facts the Tax Court decided and ordered that there was a deficiency of $4,982.54 in the 1952 income tax paid by taxpayers Ersel Beus and his wife, and for the same year there was a deficiency of $10,591.36 in the income tax paid by taxpayers W. J. Beus and his wife, plus an addition to that tax of $529.57 for a negligence penalty against taxpayers W. J. Beus and his wife. It is of those decisions and actions of the Tax Court that all four of the taxpayers now seek this Court's review.

The record evidence now before us clearly and convincingly establishes the truth of all of the foregoing facts, and such record further so establishes that taxpayers neither abandoned nor intended to abandon in the year 1952 any of the then or previously existing irrigation facilities, particularly the headgate use, works, ditches, the Lateral and all facilities used in providing irrigation water to the taxpayers' Idaho farm from the Co-op. canal. On the other hand, all of the acts disclosed by the record and done by the taxpayers with reference to their retention of those water rights and facilities clearly show their intention to use and their actual use of such facilities up to as late as the year 1954 to supplement the larger water supply received from irrigation wells dug by them in 1952. There is no substantial evidence to the contrary except the expressed wishes of the taxpayers to have the Co-op. facilities, including the Lateral, serving their farm regarded as abandoned by them in the year 1952.

As was held by the Tax Court and as has been held by other courts including the Idaho Supreme Court, there must be a concurrence of the act of abandonment and the intent to do so, both of which may be shown from all the surrounding facts and circumstances. Belridge Oil Co., 11 B.T.A. 127; Talache Mines v. United States, 9 Cir., 218 F.2d 491; Helvering v. Jones, 8 Cir., 120 F. 2d 828, 830; Carrington v. Crandall, 65 Idaho 525, 147 P.2d 1009. The mere intention alone to abandon is not, nor is non-use alone, sufficient to accomplish abandonment. It is clear from the evidence in this case that those concurrent conditions which must necessarily exist before abandonment can be effective were not proved by the defendants to have existed in the year 1952, and that the

3. § 23(a) (1) (A) I.R.C.1939, provides:
    "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
    "(a) Expenses.
    "(1) Trade or business expenses.
    "(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *"
    "(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    "(1) if incurred in trade or business;"
    26 U.S.C.A. § 23(a) (1) (A).

Tax Court's action in disallowing taxpayers' claimed deductions on account of abandonment of the Lateral and the Co-op.'s irrigation facilities was clearly required by the record before that Court and this Court.

The question whether so-called "rentals" payments under the "Farm Lease—With Option to Buy" covering the Oregon land should be deducted as business expenses depends upon whether under that lease before the option was exercised those payments secured for taxpayers any equity in the farm ownership. If they did, such payments were not business expenses and were not deductible as such. Here again the acts and conduct of the parties to that lease disprove the taxpayers' contentions. In the first place, that farm had been listed for about a year by its "lessor" Pederson with a number of local real estate agents for sale and not for lease. He testified in effect that he did not wish to lease the farm but used the lease-option arrangement with the taxpayers-lessees in their transaction at their request in order to benefit them in handling their taxes. Soon after the lease and option-to-buy agreement was made, that agreement at taxpayers' instance was altered so as to indicate a loan transaction instead of a possible cash purchase payment, and the sum of the so-called rental payments and the option-to-buy payments was $46,500, which equals the fair market value of the property, and it was equal in amount to that sum which taxpayers-lessees stated on a loan application in February, 1953 was the sale price of land which they had purchased in 1952. The Tax Court's finding, in effect, that, by every payment taxpayers-lessees made under that lease and option-to-buy agreement, they intended to and did acquire an equal value of equity interest in the Oregon farm was required by the evidence and was correct. Chicago Stoker Corp., 14 T.C. 441; Haggard v. Commissioner, 9 Cir., 241 F.2d 288, affirming 24 T.C. 1124. We agree with the Tax Court in its de-

nial of the taxpayers' claimed deduction on account of such "rentals" and with its redetermination of deficiency taxes against taxpayers based on such denial.

 We also agree with the Tax Court's sustaining of the Commissioner's assessment of a negligence penalty against taxpayers W. J. Beus and wife under § 293(a) I.R.C.1939,[4] because of inexcusable and careless error on their part in claiming a loss of $5,090.27 on the alleged sale in 1952 of cattle when the proof showed there was no such sale in that year.

The action of the Tax Court in its decisions and orders for the above mentioned two tax deficiency assessments against all the taxpayers and for sustaining the above negligence penalty against taxpayers W. J. Beus and wife is in all respects affirmed.

JAMES ALGER FEE, Circuit Judge, although present at the argument, took no part in the consideration or decision of this case.

---

4.   § 293(a) I.R.C.1939 (Please see Footnote 1)