**Joseph A. ZWETCHKENBAUM et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 6116.**

United States Court of Appeals
First Circuit.

Jan. 7, 1964.

---

James T. Lodge, Providence, R. I., with whom Walter F. Gibbons and Armstrong, Gibbons & Lodge, Providence, R. I., were on brief, for petitioners.

Earl J. Silbert, Atty., Dept. of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Melva M. Graney, Attys., Dept. of Justice, were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

These are petitions for review of eight decisions of the Tax Court of the United States upholding the Commissioner's determinations of deficiencies for the year 1957 in the income taxes of the partners in a Rhode Island partnership called "New York Lace Store" which is and for many years has been engaged in the business of selling women's and childrens' clothing and specialties at retail. For present purposes the undisputed facts can be summarized with substantial accuracy as follows:

In 1946 and 1948 the partnership leased and subleased for long terms large contiguous areas in adjacent buildings in downtown Pawtucket, Rhode Island. In order to integrate the various leased areas into a single store and to attract a higher quality of trade, the partnership made extensive improvements of a permanent nature in the premises at a cost of $194,134.57. These improvements consisted for the most part of executive offices, air conditioning, sprinklers, store fronts and entrances, display windows and appropriate interior decorating. Up to 1957 the partnership in computing its distributable net income depreciated the cost of these improvements over the term of their anticipated useful life or over the term of the lease, whichever was the shorter.[1] As of the beginning of 1957 the unrecovered cost of the improvements stood on the partnership books at $125,-448.21.

Although its leases and sublease, with a minor exception, were not to expire until 1972, the partnership moved its business to a suburban shopping center in March, 1957. In that year the partnership claimed a deduction of the entire unrecovered cost of the improvements in calculating its distributable net income, and the partners claimed their proportionate shares. Since 1957 the partnership has carried on no retail business in its downtown premises, but it has used a portion of the second floor for the marking and storage of merchandise. Its efforts to terminate its leases and sublease have been unsuccessful. Its attempts to sublease the premises as a retail store have likewise been unsuccessful. It has, however, realized some revenue, $1,500 per year, from a corporation owned in large part by some of the partners which under an oral agreement uses a small portion of the premises as a storage space. Ten or twelve of the corporation's employees make some use of the employee toilet facilities.

The taxpayers contended below and contend here that they are entitled to deduct their proportionate shares of the entire unrecovered cost of the improvements in 1957 either under § 165(a) of the Internal Revenue Code of 1954 as a

---

1. The partnership and the partners filed their returns on the calendar year basis with the director of internal revenue for the district of Rhode Island.

loss sustained by abandonment of the improvements or as a deduction for extraordinary obsolescence under either the above section or § 167(a) of the Code, both quoted in the margin.[2]

The Tax Court found and the taxpayers agree that: "The move from downtown Pawtucket to a suburban area was necessitated by a decline in the partnership's volume of business in its old location beginning in 1953 and the general deterioration of the downtown area as a retail market." [3] And the Tax Court also found: "Such facilities [as those provided by the improvements] are not in demand due to the trend of retail operations away from downtown Pawtucket." But the court found: "Petitioners did not abandon the improvements by the end of 1957 and had no intention to do so" and further: "The leasehold improvements made by petitioners are of a general nature which can be used in future utilization of the premises under the leases and have not been permanently abandoned by the petitioners." On the basis of these findings the Tax Court, while conceding that the taxpayers had not been able to put the improvements "to the fullest economic use," held that "an extended period remains within which the petitioners may realize the possibility of utilizing the lease and the accompanying improvements." Wherefore it concluded that they had not suffered a loss by abandonment in the tax year in question.

■ Some aspects of the above findings of the Tax Court impress us as superficial. While it is true that the taxpayers did not abandon the improvements in the sense of consigning them to the junk heap or selling them for salvage value,[4] the fact remains that they could do neither. The improvements became part of the realty, and for readily understandable reasons the taxpayers could not escape their obligations under their leases. They were saddled with the improvements as Sinbad the Sailor was saddled with the Old Man of the Sea. Moreover, we would assume that improvements of a "general nature" would be improvements such as applying a new roof or installing a new heating system, rather than improvements appropriate for premises devoted to the retail sale of women's and children's ware to a superior class of trade, improvements of a nature which for the most part would obviously be of little if any value, or even use, in a retail hardware or grocery store.

Nevertheless, we think the ultimate result reached by the Tax Court on this aspect of the case must be sustained.

■■ "The rule, as nearly as it may be stated as a generic proposition, is that losses may be deducted only when identifiable events have occurred which clearly prove something more than a shrinking in value or depreciation in value—something which demonstrates that un-

---

2. "§ 165. Losses
   "(a) General rule.—
   "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
   "§ 167. Depreciation
   "(a) General rule.—
   "There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
       "(1) of property used in the trade or business, or
       "(2) of property held for the production of income."

3. The taxpayers' principal witness, who described his work as assisting the principal

partner, testified: " * * * when we took the leases * * * our business was good. Then in '53, '54 and '55 we dropped perhaps 30 per cent of our volume." And he also testified: "Retailing was dead downtown. To put it plain and simple we had to find a new plant to conduct our business and make a livelihood from it."

4. This is not to imply that every loss by abandonment must be evidenced by a discard of the property or a sale of it for salvage; such a loss may also be realized by the permanent discard of an asset used in business, the loss being reduced by the asset's salvage value if it has any. See 5 Mertens, Law of Federal Income Taxation, § 28.17.

der no reasonable condition does any utility remain in discarded or destroyed property, or that there is no reasonable possibility of avoiding a loss of capital by reimbursement or a reversal of circumstances." Mertens, supra, § 28.15. This rule poses questions of fact as to which the decision of the Tax Court can be reversed only if "clearly erroneous." Title 26 U.S.C. § 7482(a), Rule 52(a) Federal Rules of Civil Procedure. While this case might have been decided otherwise, we cannot say on the record before us that the taxpayers have shown that the Tax Court's finding of the possibility of future utilization of the improvements, at least to some extent, is clearly erroneous.

The Tax Court disposed of the taxpayers' contention that they had suffered a loss in the tax year 1957 by extraordinary obsolescence of the improvements in a single sentence reading as follows: "As for the claim of obsolescence, no more need be said than that this is a type of deduction which can under no circumstances be permitted in a single year." We cannot endorse this broad proposition. Instances of obsolescence in a single year may be rare, but we find no basis in the statute, in the regulations promulgated under it or in reason for a rule of law that obsolescence cannot possibly occur within twelve months. We agree with the Court of Appeals for the Ninth Circuit in Keller Street Development Company v. Commissioner, 323 F. 2d 166, at page 172 (C.A.9, 1963), in which the court said: "It is conceivable that an external force may arise within a single taxable period which will cause the sudden uselessness of a business asset. There is no compelling logic persuading this court to formulate a rule which would permit the allowance of an obsolescence deduction when the process of growing useless occurs over a thirteen month period but which would require the disallowance of such a deduction if the process of growing useless occurs within a twelve-month period. The taxpayer should be permitted to recoup the capital expended for the property out of its earnings during the period in which the property grows useless regardless of the length of that time period."

This, however, is not a case of obsolescence occurring within the tax year 1957, or any other single tax year, for although the partners moved their business in 1957 the writing of doom appeared on the wall in 1953.[5]

Obsolescence for the purposes of the revenue acts may arise from a number of causes including the shifting of business centers. United States Cartridge Co. v. United States, 284 U.S. 511, 516, 52 S.Ct. 243, 76 L.Ed. 431 (1932), cited and quoted with approval in Real Estate-Land Title & Trust Co. v. United States, 309 U.S. 13, 16, 60 S.Ct. 371, 84 L.Ed. 542 (1940). But to take a deduction for obsolescence in a single tax year the shift of business center must occur in a single tax year, as perhaps might occur as a result of urban renewal. Here, however, the taxpayers' downtown business began to decline by reason of a shifting market in 1953 and continued to do so thereafter until the taxpayers moved their business bodily to a suburban shopping center. They have failed to make out a case for sudden obsolescence, i. e., obsolescence occurring in a single tax year, although it may well be as counsel for the Commissioner suggest in their brief that under pertinent treasury regulations they may be able to shorten the useful life of the improvements and thereby increase their depreciation allowance. All that we hold here is that the taxpayers have not made out a case for recouping the entire unrecovered cost of the improvements in a single tax year, to wit, 1957.

Judgment will be entered affirming the decisions of the Tax Court.

---

5. Book of Daniel Ch. V §§ 25, 26.
   "25. And this is the writing that was written, MENE, MENE, TEKEL, UPHARSIN.

"26. This is the interpretation of the thing: MENE; God hath numbered thy kingdom, and finished it."