JOHN R. THOMPSON CO., a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 70 C 1373.

United States District Court, N. D. Illinois, E. D.

Sept. 22, 1971.

Douglas L. Barnes, William A. Cromartie, Hopkins, Sutter, Owen, Mulroy & Davis, Chicago, Ill., for plaintiff.

Herbert Grossman, Dept. of Justice, Tax Div., Washington, D. C., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action to recover federal income taxes. The record in this case consists of the pleadings, a stipulation filed June 16, 1971, and the depositions of John R. Thompson and Theodore P. Parker submitted to the Court in lieu of a trial. The basic issue in this case is whether plaintiff sustained a loss which is deductible from ordinary income in computing its federal income tax under either Section 165 or Section 167 of the Internal Revenue Code. We find that plaintiff sustained no such deductible loss and, consequently, that it is entitled to no recovery in the instant proceeding.

### I. FINDINGS OF FACT

The relevant facts are as follows:

1. The taxpayer is a corporation duly organized and existing under the laws of the State of West Virginia with its principal office at 29 West Randolph Street, Chicago, Ill. 60601.

2. This action is brought to recover federal income taxes for the year ended December 31, 1959, in the amount of

$105,300 in tax principal and $22,597.67 in deficiency interest assessed and collected by the government. The deficiency assessment for the year 1959 resulted from events occurring in the taxable year 1962, for which the taxpayer claimed a net operating loss carryback to the year 1959, a portion of which was disallowed by the government.

3. For the calendar year 1962, the taxpayer filed a federal income tax return showing a consolidated net operating loss which constituted a net operating loss carryback to the year 1959 in the amount of $404,553.72. This carryback loss resulted in allowance by the government of a tentative carryback adjustment and refund of 1959 tax in the amount of $218,453.61.

4. Thereafter, upon audit of the return of the taxpayer for the year 1962, the government adjusted the 1962 tax loss and the carryback to the year 1959 and asserted a deficiency for the earlier year of $105,300 in tax principal and $22,579.67 in interest. The assessed tax and interest, plus additional accrued interest to time of final payment of the assessment of $2,789.82 were satisfied by payments made and credits applied, beginning with a payment by the taxpayer of $13,493.70 on October 3, 1966. The remainder of the payments ($113,-928.29) were made on or after August 1, 1967.

5. On July 28, 1969, the taxpayer filed with the District Director of Internal Revenue, Chicago, Illinois, a claim for refund of $105,300 in assessed tax, plus deficiency interest and interest allowable by law, attributable to taxes paid for the calendar year 1959. Since the claim for refund was filed more than three years after the return for 1962 was filed and more than two years after the first payment of $13,493.70 was made on August 3, 1966, the claim for refund was untimely as to that payment of $13,493.70, pursuant to Section 6511(a) and (b) of the Internal Revenue Code. Consequently, this Court lacks jurisdiction over that amount.

6. With regard to the remainder of the assessment, in excess of the original payment of $13,493.70, the claim for refund was timely, since it was filed within a two-year period after payments made. Accordingly, this Court has jurisdiction over the claim for refund to the extent of the assessment and payments of $113,928.29 pursuant to Title 28, United States Code, Section 1346(a)(1).

7. The deficiency assessment for the year 1959 was attributable to the government's disallowance of a portion of the net operating loss carryback from the year 1962 in the amount of $195,000. This $195,000 represented a loss shown on the 1962 tax return and claimed to have been incurred upon the partial worthlessness of a collection of paintings owned by the taxpayer and utilized by it in the operation of a trade or business carried on in the name of Henrici's Randolph Street Restaurant located at 61–65 and 67–71 West Randolph Street, Chicago, Illinois.

8. The principal business of the taxpayer and its subsidiary corporations in the tax years in controversy herein and during all prior periods extending back through 1929 was the operation of various restaurants or restaurant chains. In 1929, the taxpayer acquired from the Philip Henrici Co. an established family-owned restaurant business (hereinafter referred to as either "Henrici's" or "Henrici's Restaurant") conducted in downtown Chicago for many years by Philip Henrici Co. The Henrici's Restaurant, as it was commonly known, had been started by Philip Henrici in Chicago in the year 1868. Its principal location from 1868 to 1962 was on West Randolph Street, Chicago. It had a unique decor, character and quality identified with its early family history and the "flavor" of its Victorian period origin.

9. Over a period of many years prior to 1929, commencing before the death of Philip Henrici in 1906, the Philip Henrici Co. had acquired and used in the decoration of its Randolph Street premises a

collection of 57 large oil paintings, five engravings and two prints by 19th Century artists (hereinafter referred to as the "1929 paintings").

10. These 1929 paintings were acquired by the taxpayer in 1929 as part of the assets of Henrici's Restaurant and were assigned a value at that time for basis purposes of $252,500 which the parties agree was both the cost basis for all the paintings (under section 1012 of the Code) and the adjusted basis for the paintings (under section 1011 of the Code) on January 1, 1962.

11. The leasehold and improvements in which Henrici's Restaurant was located were condemned by the City of Chicago in the year 1962 for the construction of a new City Hall and Courts Building to occupy the entire block in which the premises were located. Henrici's Restaurant was closed pursuant to this condemnation on August 15, 1962.

12. From the condemnation proceedings which occurred during the taxable year 1962, the taxpayer recovered an award in the amount of $89,000 for its loss of the leased business premises and fixtures therein. The parties agree that the taxpayer neither asked for nor did it receive any compensation from the condemning authority for any loss in value of any paintings. The taxpayer's claim that a loss occurred in 1962 is grounded upon the fact that the condemnation terminated the business in which the paintings were utilized, at a time when the market value of the paintings was less than their adjusted basis.

13. From the moment of acquisition in 1929 until sometime in 1962, the paintings were used by the taxpayer in its conduct of Henrici's Restaurant at 61–65 and 67–71 West Randolph Street. The parties agree that both the cost basis (under section 1012 of the Code) and the adjusted basis (under section 1011 of the Code) on January 1, 1962, of forty-two enumerated paintings from the 1929 collection which were appraised five days prior to Henrici's closing on August 15, 1962, was $184,699.04. The parties further agree that the fair market value of these paintings immediately after the condemnation was $44,150. This figure is based upon an appraisal report made by Irving S. Tarrant, a qualified art appraiser, on August 10, 1962. At the time of the condemnation of the premises in 1962, the physical condition of all of the paintings was good, and not significantly different from their condition at the time the paintings were acquired in 1929. Paintings of similar quality, style and atmosphere were generally available for purchase at art galleries in Chicago and New York. Hanzel Galleries of Chicago, which ultimately sold the paintings in issue in 1964, holds sales of generally similar paintings three or four times a year.

14. From the time of the condemnation in 1962, until October 18, 1964, the taxpayer held the paintings for disposition in the most profitable (or least unprofitable, as the case may be) manner possible. On October 18, 1964, the 1929 paintings, together with the remainder of the paintings acquired prior to 1929 having a total adjusted basis of $252,500, were sold through a public auction at the Hanzel Galleries. The Internal Revenue Service treated the difference between the basis of the paintings of $252,500 plus the sales commissions paid of $10,083.75, and the sales proceeds received of $40,335.00, as a capital loss in the amount of $222,248.75 in 1964, the year of sale.

15. The parties have stipulated that the only question to be decided in this case is:

Did the taxpayer, during its taxable year ended December 31, 1962, sustain a loss—with respect to those 1929 paintings located at Henrici's Restaurant—which loss is deductible from ordinary income in computing its Federal income tax under either

(a) Section 165(a) of the Code, or

(b) Section 167 of the Code?

If the answer to the above question is yes, then the taxpayer is entitled to an

additional net operating loss deduction for its taxable year ended December 31, 1959, in the amount of $140,549.04. If the answer to the above question is no, then the taxpayer is entitled to no recovery in the instant proceeding.

## II. SECTION 165

Section 165 of the Internal Revenue Code provides:

Sec. 165. Losses.

(a) *General rule.*—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

(b) *Amount of deduction.*—For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

The regulations issued pursuant to section 165 refer to two different types of deductions—losses and obsolescence of non-depreciable property.

### A. *Losses*

Treasury Regulation § 1.165–1 in relevant part provides:

§ 1.165–1 Losses.—(a) *Allowance of deduction.* Section 165(a) provides that, in computing taxable income under section 63, any loss actually sustained during the taxable year and not made good by insurance or some other form of compensation shall be allowed as a deduction subject to any provision of the internal revenue laws which prohibits or limits the amount of the deduction. This deduction for losses sustained shall be taken in accordance with section 165 and the regulations thereunder. For the disallowance of deductions for worthless securities issued by a political party, see § 1.271–1.

(b) *Nature of loss allowable.* To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in § 165(h) and § 1.165–11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.

\*     \*     \*     \*     \*     \*

(d) *Year of deduction.* (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year.

\*    \*    \*

A reading of this regulation indicates that there are two requirements for any claimed loss to be deductible under Section 165: (1) the loss must be evidenced by closed and completed transactions, fixed by identifiable events; and (2) the loss must be sustained during the taxable year. We find that neither of these two requirements has been met by the taxpayer.

■ At the outset, it is difficult to find evidence of any recognizable loss sustained by the taxpayer in 1962 with respect to the 1929 paintings. It is well settled that mere fluctuation in value is not synonymous with loss. *See, e. g.,* United States v. S.S. White Dental Manufacturing Co., 274 U.S. 398, 47 S.Ct. 598, 71 L.Ed. 1120 (1927); and Commissioner of Internal Revenue v. McCarthy, 129 F.2d 84 (7th Cir. 1942). The taxpayer has not shown that the market value of these paintings was affected in any way by the 1962 condemnation of Henrici's business premises. The stipulation includes an appraisal of the fair market value of the paintings as of the date of the condemnation. Nowhere in the record is there any indication that the condemnation in any way affected the fair market value of these paintings. Inasmuch as there is no evi-

dence to the contrary, we assume that their fair market value was the same after condemnation of the premises as it had been prior to the condemnation, and that the diminution in value from their original cost (which the taxpayer argues is the loss) was due to differing artistic standards and evaluations over a number of years and not in any way connected with the event of condemnation. The loss that the taxpayer seeks to deduct represents a loss in market value caused not by the condemnation but by changes in artistic tastes.

■■ The burden of proving loss is, of course, upon the taxpayer. Burnet v. Houston, 283 U.S. 223, 51 S.Ct. 413, 75 L.Ed. 991 (1931); United States v. Lease, 64–1 USTC par. 9324 (S.D.N.Y. 1964), aff'd 346 F.2d 696 (2d Cir. 1965). In the instant case, the taxpayer argues that the condemnation of the business premises wherein Henrici's was located in 1962 was an identifiable event which gave rise to the alleged loss. No cases are cited in support of this contention that such a condemnation is a closed and completed transaction within the meaning of Treas.Reg. § 1.165–1. The taxpayer's essential argument is that this requirement has been stipulated to. The government does not concede this point, and a reading of the stipulation fails to justify such a conclusion. While it is obvious that the condemnation was an identifiable event, within the meaning of the regulation, it is equally clear that it was not a completed transaction giving rise to a deductible loss. Until the paintings were subsequently sold, there was no loss sustained. Conceivably, they might in 1964 have brought a price higher than their cost or higher than the appraisal, in which event there would have been a gain or a lesser actual loss, but until their sale in 1964 it was impossible to determine whether there would be a gain or loss or the amount thereof.

The taxpayer sustained no loss with respect to the 1929 paintings due to the 1962 condemnation of the restaurant's business premises. It is clear from the stipulation and the depositions that the paintings did not become worthless on the date of the condemnation. In fact, after learning of the condemnation, the taxpayer sought other locations for Henrici's Restaurant and would have used the 1929 paintings in a new location had one been found. In addition, the taxpayer held the paintings for the most profitable future disposition. All this shows that, as far as the taxpayer was concerned, there was nothing at all closed about the future of the paintings at the time of the condemnation. For these reasons, we find that no loss was evidenced by closed and completed transactions in 1962.

It is apparent from the foregoing that the loss claimed by the taxpayer was not actually sustained during 1962, the taxable year in question. The paintings continued to be held by the taxpayer for future use or sale and were in fact sold in 1964. Any loss would, therefore, be deductible in 1964, for that is the year in which the taxpayer actually sustained it.

B. *Obsolescence of non-depreciable property*

■ The taxpayer urges alternatively that, if the loss was not deductible in 1962 under Treas.Reg. § 1.165–1, it was deductible as obsolete non-depreciable property under Treas.Reg. § 1.165–2. That section reads in part as follows:

§ 1.165–2 Obsolescence of nondepreciable property.—(a) *Allowance of deduction.* A loss incurred in a business or in a transaction entered into for profit and arising from the sudden termination of the usefulness in such business or transaction of any nondepreciable property, in a case where such business or transaction is discontinued or where such property is permanently discarded from use therein, shall be allowed as a deduction under section 165(a) for the taxable year in which the loss is actually sustained. For this purpose, the taxable year in which the loss is sustained

is not necessarily the taxable year in which the overt act of abandonment, or the loss of title to the property, occurs.

(b) *Exceptions.* This section does not apply to losses sustained upon the sale or exchange of property, losses sustained upon the obsolescence or worthlessness of depreciable property, casualty losses reflected in inventories required to be taken under section 471. The limitations contained in sections 1211 and 1212 upon losses from the sale or exchange of capital assets do not apply to losses allowable under this section.

While our conclusion and finding that the taxpayer in fact suffered no loss in 1962 so far as the 1929 paintings are concerned disposes of any claim for a deduction under Section 165, it is also clear that no deduction is allowable for obsolescence of non-depreciable property under the foregoing regulation.

Works of art are not properly classified as business assets and are not subject to depreciation deductions from gross income. A.R.R. 4530, C.B. II–2,–145 (1923), superseded by Rev.Rul. 68–232, 1968–1 C.B. 79. Therefore, they qualify as non-depreciable property under Treas.Reg. § 1.165–2.

A reading of this regulation indicates that there are three requirements to be met if an alleged loss is to be deductible thereunder: (1) the loss must be incurred in a business; (2) the loss must arise from the sudden termination of the usefulness of the property in the business; and (3) the loss must be evidenced by a discontinuance of the business *or* by a permanent discarding of the property from use in the business. It is agreed by the parties that the loss was incurred in a business. It is clear from the record, however, that the business of the taxpayer was not discontinued but continued to operate at other locations. Consequently, any sudden termination of the usefulness of the property must be evidenced by a permanent discarding of the property from use in the business.

The 1929 paintings were not, however, permanently discarded from use in the business of the taxpayer in 1962; there was no sudden termination of their usefulness in its business, and, consequently, there is no deductible loss under Treas.Reg. § 1.165–2 and Section 165 of the Internal Revenue Code.

At the time of the 1962 condemnation of Henrici's on Randolph Street, the taxpayer, John R. Thompson Co., was actively engaged in the restaurant business and had many restaurants in operation, including twelve that used Henrici's name and decor. A new Henrici's was being opened in Oakbrook. From the records, it is clear that the taxpayer sought premises in the Chicago "Loop" area in order to relocate the original Henrici's, but was unable to find premises with sufficient floor space to effectively reproduce the original Henrici's. It is obvious from the foregoing that, in 1962, the paintings were not useless to taxpayer in the restaurant business. It may be that premises could not ultimately be found which the taxpayer considered to be adequate, but this hardly indicates that the paintings suddenly became useless in the taxpayer's business or were "obsolete" as that term is commonly understood. Indeed, it is difficult to conceive of a work of art becoming obsolete under any circumstances.

The taxpayer cites several cases to show that the paintings should qualify for a deduction under Treas.Reg. § 1.165–2. His reliance upon these cases is misplaced. Burnet v. National Industrial Alcohol Co., 282 U.S. 646, 51 S. Ct. 265, 75 L.Ed. 592 (1931), and Manhattan Brewing Co. v. Commissioner, 6 B.T.A. 952 (1927), each involved the allowance of a deduction for the losses caused by the obsolescence of brewery facilities due to the advent of Prohibition. In the instant case, there is no such obvious external force causing obsolescence of the property in question. Here, the ultimate sale of the 1929 paintings followed a decision not to use them in the business which continued at other locations. In the Prohibition cas-

es, the property became obsolete because the business in which they were used became illegal and terminated.

In two other cases relied upon by the taxpayer, I. Frank Sons Co. v. Commissioner, 22 B.T.A. 40 (1931), and Horn & Hardart Baking Co. v. Commissioner, 20 B.T.A. 486 (1930), the losses were allowed for property which had been used in the taxpayer's business and which had actually been abandoned as scrap by the taxpayer. We find no evidence of abandonment in this case. In fact, the taxpayer held the paintings for two years after the alleged loss and then sold them for their fair market value which was substantially higher than scrap value.

The taxpayer has failed to show that it permanently abandoned or discarded the paintings in 1962. It has generally been held that the taxpayer must show an intention to abandon the property in question, and an affirmative act of actual abandonment. Talache Mines v. United States, 218 F.2d 491, 498 (9th Cir. 1954), cert. denied, 350 U.S. 824, 76 S.Ct. 51, 100 L.Ed. 736 (1955); Beus v. Commissioner of Internal Revenue, 261 F.2d 176 (9th Cir. 1958); Belridge Oil Co. v. Commissioner, 11 B.T.A. 127 (1928); W. B. Davis & Son, Inc. v. Commissioner, 5 T.C. 1195 (1945); Miners Broadcasting Service, Inc. v. Commissioner, 23 T.C.M. 1618 (1964). The record here indicates neither an intention to abandon nor any act that could affirmatively show such an intention.

The fact that the taxpayer held the allegedly abandoned property for sale is often probative of the fact that the property has not been abandoned. See, Bloomington Coca-Cola Bottling Co. v. Commissioner of Internal Revenue, 189 F.2d 14 (7th Cir. 1951); Blum v. Commissioner of Internal Revenue, 133 F.2d 447 (2d Cir. 1943). In the instant case, the taxpayer held the allegedly abandoned property for future use or sale, and then sold the property for its fair market value at a later date. This hard-

ly constitutes abandonment of the property as required under the regulation.

For the above reasons, we find that the taxpayer is not entitled to a deduction in 1962 for its alleged loss with respect to the 1929 paintings as obsolete non-depreciable property under Treas. Reg. § 1.165–2 and Section 165 of the Internal Revenue Code.

## III. SECTION 167

Section 167 of the Internal Revenue Code provides in pertinent part:

Sec. 167. *Depreciation.*

(a) General rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

\*        \*        \*        \*        \*        \*

(f) Salvage value.—

(1) General rule.—Under regulations prescribed by the Secretary or his delegate, a taxpayer may, for purposes of computing the allowance under subsection (a) with respect to personal property, reduce the amount taken into account as salvage value by an amount which does not exceed 10 percent of the basis of such property (as determined under subsection (g) as of the time as of which such salvage value is required to be determined).

(2) Personal property defined.— For purposes of this subsection, the term "personal property" means depreciable personal property (other than livestock) with a useful life of 3 years or more acquired after the date of the enactment of the Revenue Act of 1962.

(g) Basis for depreciation.—The basis on which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section

1011 for the purpose of determining the gain on the sale or other disposition of such property.

The taxpayer argues in the further alternative that, assuming no loss is deductible under Section 165, a depreciation loss should be found under Section 167. This argument is, of course, inconsistent with the taxpayer's earlier position with respect to Treas.Reg. § 1.165–2, "Obsolescence of Non-depreciable Property," but this Court must deal with each claim regardless of its possibly inconsistent or alternative nature. Fed.R.Civ.P. 8.

As stated above in our discussion of Treas.Reg. § 1.165–2, works of art are generally non-depreciable property. A. R.R. 4530, C.B. II–2,145 (1923), which was in effect in 1962 at the time of the condemnation of Henrici's Randolph Street premises provides in pertinent part:

It appears that A, being a man of artistic temperament, has furnished his office with furniture, etc., not of a style usually found in business offices; that such furnishings are of a very expensive type and among them are works of art and curios; it is claimed that the furnishings are only such as are proper in the office of a man following A's profession (motion-picture director). While it is not believed that anyone may for tax purposes be limited as to the amount he is to expend for office furniture, it is the opinion of the committee that works of art and curios are not, in A's case, properly to be classed as business assets, and that such articles are not subject to such depreciation as is allowable as a deduction from gross income for income tax purposes, the value and desirability of such articles, as a general rule, increasing with age, and inasmuch as the rest of such furniture as may properly be classed as "business assets" has not been shown separate from the cost of the works of art and curios, the Committee recommends that the action of the Income Tax Unit in disallowing depreciation

in the amount of _____ dollars be sustained until such time as the taxpayer may furnish evidence that depreciation is properly to be allowed.

Rev.Rul. 68–232, 1968–1 C.B. 79, which has superseded A.R.R. 4530, provides:

A valuable and treasured art piece does not have a determinable useful life. While the actual physical condition of the property may influence the value placed on the object, it will not ordinarily limit or determine the useful life. Accordingly, depreciation of works of art generally is not allowable.

A.R.R. 4530, C.B. II–2,145 (1923), is superseded, since the position set forth therein is restated under current law in this Revenue Ruling.

The taxpayer argues that, despite the fact that the paintings are works of art, they should also be considered business assets because they had been used in the taxpayer's business. The taxpayer also argues that the logic of A.R.R. 4530 has been challenged and that the instant case is a good one in which to refuse to follow the general rule of non-depreciability of art works.

N. G. Bavesi, Inc. v. Commissioner, 5 T.C.M. 450 (1946), is cited by the taxpayer as support for its contention that the paintings should be held to be depreciable. The assets involved in that case were designs for engravings that had a definite useful life of less than one year. There was no mention of the possibility that the assets in question were non-depreciable. This case does not support the proposition that the 1929 paintings are depreciable assets.

We agree with the material quoted by the taxpayer from 4 Mertens, Law of Federal Income Taxation, par. 23.09, n. 6, to the effect that a strict application of A.R.R. 4530 to all cases may be of doubtful merit. However, the logic underlying that ruling would call for its application in this situation. The physical condition of the paintings in no way affected their useful life. The parties

have stipulated that the paintings were in the same general physical condition at the time of the condemnation in 1962 as they were at the time of purchase in 1929. The taxpayer cannot assert a claim for a deduction on the basis of wear and tear when it has agreed that there has been none.

Rev.Rule 68–232 has clarified and simplified A.R.R. 4530. It is clear in the instant case that the physical condition of the paintings in no way affected or influenced their value. For that reason, we find the logic of the rulings compelling and hold that these particular works of art, although used in the taxpayer's business, are non-depreciable assets.

Furthermore, even if we were to find that the paintings were depreciable, the taxpayer has failed to produce any evidence of physical wear and tear. We would find ourselves at a loss to establish a realistic useful life or the extent of any depreciation. The taxpayer's suggestion that the difference between the original cost basis and the final selling price of the paintings represents their depreciation is obviously unrealistic. As previously discussed, this difference simply reflects changes in artistic appreciation and in the art market and has no relation whatsoever to either the physical condition or the commercial usefulness of the paintings.

The taxpayer's final alternative contention is that it is entitled to a deduction under either Treas.Reg. § 1.167 (a)–8, "Retirements," or Treas.Reg. § 1.167(a)–9, "Obsolescence."

The first requirement of these regulations is that the property be depreciable. As already discussed, the 1929 paintings are non-depreciable assets. Accordingly, the regulations are not applicable.

In addition, these regulations, like those applicable to the obsolescence of non-depreciable property, require the permanent withdrawal of the property from use in the taxpayer's business. We have already found that the paintings were not permanently withdrawn from business use in 1962 and that the taxpayer has failed to show any evidence of abandonment. For these reasons, we find that the taxpayer would not be entitled to an obsolescence or retirement deduction under Section 167 even if the 1929 paintings were depreciable assets.

The very cases cited by the taxpayer support the finding that there was no permanent withdrawal of the paintings from the use in the taxpayer's business. See, Coors Porcelain Co. v. Commissioner of Internal Revenue, 429 F.2d 1 (10th Cir. 1970); United California Bank v. Commissioner of Internal Revenue, 340 F.2d 320 (9th Cir. 1965); Keller Street Development Co. v. Commissioner of Internal Revenue, 323 F.2d 166 (9th Cir. 1963); and Zwetchkenbaum v. Commissioner of Internal Revenue, 326 F.2d 477 (1st Cir. 1964).

In short summary, the taxpayer suffered no loss with respect to the paintings in 1962. Until they were sold in 1964, it was impossible to determine whether there would be a gain or a loss on their disposition or the amount thereof. Works of art are not generally depreciable assets and these are no exception, it being agreed that their condition in 1962 was substantially the same as in 1929. Nor do works of art normally become obsolete although they may fluctuate in value depending on a number of factors none of which has any relation to their utility. These paintings, in any event, were not abandoned or discarded by the taxpayer in 1962 but were held for future use or sale until their disposition in 1964. Accordingly, the difference between their cost basis and their selling price in 1964 is not deductible in 1962 under either Sec. 165 or Sec. 167 of the Internal Revenue Code.

This memorandum will constitute the findings of fact and conclusions of law required to be made by Rule 52(a) of the Federal Rules of Civil Procedure. An appropriate order will enter granting judgment with costs for the defendant.