LEWIS P. and DAHLIA J. TERRELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Terrell v. Commissioner
Docket No. 7375-77.
United States Tax Court
T.C. Memo 1979-222; 1979 Tax Ct. Memo LEXIS 304; 38 T.C.M. (CCH) 892; T.C.M. (RIA) 79222; June 5, 1979, Filed Lewis P. Terrell, pro se. David L. Jordon and James R. Turton, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax and additions to tax under section 6653(a): [1]/ Addition Year
Deficiency
(sec. 6653(a))
1973
$2,234.35
$111.72
1974
4,847.07
242.35
1975
4,323.22
216.16
Numerous concessions having been made by the parties, the issues remaining for decision are: 1. Whether petitioners are entitled to a claimed business expense deduction in the amount of $810 for 1974 for certain *306 payments allegedly made to their son, Robert. 2. Whether petitioners are entitled to claimed business expense deductions in the respective amounts of $1,070 and $1,745 for 1974 and 1975 for payments allegedly made to their daughter, Kathy. 3. Whether petitioners are entitled to depreciation deductions on personal property in the amounts of $1,796.17 and $973.44 for 1974 and 1975, respectively. 4. Whether petitioners are entitled to a deduction for an alleged business loss in the amount of $5,000 in 1974. 5. Whether petitioners are entitled, pursuant to section 117, to exclude from 1974 income as a scholarship or fellowship grant a payment received by petitioner Dahlia Terrell in the amount of $2,500. 6. Whether petitioner Lewis Terrell realized unreported taxable income in the amount of $6,859.69 from his law practice in 1974. 7. Whether any part of the underpayment of taxes for 1973, 1974, and 1975 was "due to negligence or in tentional disregard of rules and regulations" within the meaning of section 6653(a). FINDINGS OF FACT Petitioners Lewis P. and Dahlia J. Terrell (hereinafter petitioners), husband and wife, were legal residents of Lubbock, Texas, *307 when they filed their petition. They filed joint Federal income tax returns for 1973, 1974, and 1975 with the Director, Internal Revenue Service Center, Austin, Texas. 1 and 2. Wage Expense Issues
During 1974 while petitioners son, Robert Terrell (Robert), was a student at Texas Tech University, he lived in a house at 4320 41st Street, Lubbock, Texas, which was owned by petitioners. While he lived there, Robert spent part of his time paneling, painting, carpeting, repairing, and making other improvements to the house. Robert was not working under a contract with petitioners, did not work regular hours, and did not keep a record of the number of hours he worked. Petitioners paid Robert various amounts per month totaling approximately $810 in 1974. Petitioners sold the house in 1975. In 1974, petitioners paid their daughter, Kathy Terrell (Kathy), also a student at Texas Tech, approximately $1,070 for doing office work at petitioner Lewis P. Terrell's (Lewis) law firm, for helping paint the house at 4320 41st Street, for helping out around petitioners' home, and for helping her mother, petitioner Dahlia J. Terrell (Dahlia), an associate professor at Texas Tech, *308 grade examination papers. Kathy was paid "by the job." In 1975, Kathy received approximately $1,745 from petitioners. Petitioners deducted $810 and $1,070 on their 1974 Federal income tax return and $1,745 on their 1975 return as "salaries and wages" expense of Lewis' law practice. Respondent determined that those amounts did not constitute ordinary and necessary business expenses. 3. Depreciation Issue
Prior to and during at least part of 1974, Lewis was a partner in a law partnership with his brother, Buford C. Terrell (Buford), and Joyce Lansford (Joyce). After having personal difficulties with the other partners, Joyce left the partnership. The date on which that event occurred is not shown by the evidence of record. Subsequently, in 1976, Buford left the partnership. At termination of the partnership, Lewis acquired complete ownership of the office furnishings. Lewis did not pay any money for those furnishings. On schedule C, relating to Lewis' law practice, of their 1973 Federal income tax return, petitioners claimed depreciation deductions on a proportionate part of the depreciable basis of certain furnishings used in the law practice. In 1974 and 1975, in *309 computing the depreciation deductions on those items, petitioners increased the depreciable basis to reflect complete ownership. On the returns for those years, petitioners claimed depreciation deductions relating to Lewis' law practice of $6,943.10 and $8.869.88, respectively. Included are amounts of $736.22 and $632.40 for 1974 and 1975, respectively, which represent deductions in excess of those which would have been claimed had petitioners not increased the depreciable basis of those furnishings. Respondent determined in his notice of deficiency that petitioners are not entitled to depreciation deductions of $3,984.99 and $5,044.70 for 1974 and 1975, respectively. After concessions by both parties, the only amounts still in issue are those relating to the increase in basis. 4. "Worthless Business" Deduction Issue
In 1974, Lewis paid Martha and David Hobbs $5,000 for a business called Hobbs Bookkeeping Service (the service). Prior to the purchase, Martha Hobbs (Martha) maintained ten sets of books and prepared numerous income tax returns. For his $5,000, Lewis received 100 files containing former years' tax returns of the service's clients. Lewis did not receive *310 the ten sets of books. In 1974, with the help of an assistant, Lewis earned $941 from the preparation of tax returns for individuals whose prior returns were included in the acquired files. In 1975, Lewis employed Karen Whitt, who then took over the business and operated it. On their 1974 Federal income tax return, petitioners claimed a $5,000 deduction relating to Lewis' legal practice for a "tax business purchase that was worthless." Respondent determined in his notice of deficiency that the deduction is not allowable because it had not been established that the business became worthless during 1974. 5. "Honorarium" Issue
In 1966, Dahlia received her doctorate degree from Texas Tech University and began work, along with 29 other people, on a project that was intended to produce definitive editions of all of Washington Irving's works (the Irving project). Initially, Dahlia contracted with the University of Wisconsin Press to edit four works which were expected to appear in one volume of a set of 29 volumes. However, because of the high costs involved, G. K. Hall & Co. took over the publication rights. For her efforts, Dahlia was to receive ten copies of the volume *311 she edited and one copy of the other 28 volumes. Dahlia worked intermittently on her volume, scheduled for publication in 1978, from 1966 through 1978. During that time she incurred expenses related to her editing tasks for which she received partial reimbursement from the general editors, the Modern Language Association of America, and the Center for Edition of American Authors. Petitioners deducted on their income tax returns for 1974 and 1975 most of the expenses for which Dahlia was not reimbursed. In 1974, Dahlia, at that time an associate professor of English at Texas Tech, received $2,500, called an "honorarium" from the Modern Language Association of America (the association). Texas Tech was not associated in any way with the Irving project or with the $2,500 cash payment. On schedule C of their 1974 income tax return, petitioners reported as gross receipts only $1,000 of the $2,500 "honorarium." Petitioners excluded the remainder under section 117 on the theory that it was a scholarship or fellowship grant. Respondent determined in the notice of deficiency that the $1,500 was taxable income to petitioners. 6. Gross Receipts Issue
In the accounting records *312 of his law practice, Lewis recorded receipts of $29,989.94 in 1975. The same amount was listed on petitioners' 1975 Federal income tax return as gross receipts from Lewis' law practice. In 1975, Lewis deposited $64,957.15 in his bank account. Included in that amount was a payment in the amount of $5,350 received from Donald Floyd. Using the bank deposits method of income reconstruction, respondent determined that the gross receipts from Lewis' law practice was $36,849.63 and that petitioners had failed to report income for 1975 in the amount of $6,859.69. 7. Section 6653(a) Issue
During 1973, 1974, and 1975, Lewis was actively involved, as part of his law practice, in preparation of Federal income tax returns. On their income tax returns for 1973, 1974, and 1975, petitioners claimed numerous deductions, most of which they readily conceded at trial. Respondent determined, primarily because of those numerous frivolous deductions, that part of the underpayment of petitioners' tax for 1973 through 1975, was due to their negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a) and that petitioners are therefore liable for an *313 addition to tax equal to 5 percent of the underpayment. OPINION 1 and 2. Wage Expense Issue
In 1974, petitioners' son, Robert, spent a good deal of time making general improvements, including paneling, painting, and carpeting, on a house located at 4320 41st Street in Lubbock which was owned by petitioners. For his efforts, petitioners allege they paid Robert approximately $810 in 1974. Petitioners assert they paid their daughter, Kathy, $1,070 in 1974 for work she performed for her mother, at Lewis' office, at the house at 4320 41st Street, and at their home. Kathy received an additional $1,745 from petitioners in 1975. At trial petitioners did not establish why they made the 1975 payments. At the time all of the payments were made, Robert and Kathy were attending Texas Tech, and petitioners were paying most, if not all, of their expenses. Petitioners argue that the payments which they made in 1974 and 1975 to Robert and Kathy are deductible, presumably under section 162(a)(1), as wage expenses incurred in a trade or business. We have concluded, however, that the payments are deductible only to the extent of $300 of the 1974 payments made to Kathy. Exercising *314 our best judgment in the light of all the evidence, Cohan v. Commissioner,39 F.2d 540, 543-544 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928), we find that amount was paid to Kathy for services she performed for Lewis' law firm. That $300 was the only properly deductible wage item. We can conceive of no legal theory on which current deductions could be allowed for the work Robert allegedly performed at the house on 41st Street. The description of that work indicates he was merely maintaining or making minor or remodeling improvements on a house in which his parents, petitioners herein, permitted him to live while he was attending Texas Tech. We think the payments to Robert were nondeductible personal expenses under section 262. At best, they were capital improvements to the house. In no sense were they ordinary and necessary business expenses under section 162(a). The 1974 payments made to Kathy in excess of $300 are either nondeductible personal expenditures for the work she performed for her mother and around petitioners' home, section 262, or capital expenses, section 263; Jones v. Commissioner,242 F.2d 616 (5th Cir. 1957), *315 affg. 24 T.C. 563 (1955); see also sec. 1.162-4 Income Tax Regs. The evidence presented does not enable us to make an allocation between those two categories. With regard to the 1975 payments made to Kathy, the entire amount is nondeductible. Petitioner failed to establish the actual amount of the payments or the reason why they were made. 3. Depreciation Issue
During 1973 through 1976, Lewis was a partner in a law partnership composed, during different periods of time, of himself and one or two other attorneys. On his 1973 income tax returns, Lewis computed depreciation deductions on certain furnishings used in his law practice on a proportionate share of the items' depreciable cost basis. In 1974 and 1975, Lewis computed the depreciation deductions for those same items on a stepped-up basis which reflects complete ownership of the items. It is the increases in depreciation deductions, amounting to $736.22 and $632.40 in 1974 1975, respectively, which are in dispute. These increases are attributable to a higher basis used in the computations.
Lewis contends that starting in 1974, the steeped-up basis is his proper basis, since in that year, pursuant to *316 termination of his law partnership and in exchange for other property, he acquired complete ownership of the items in question. Petitioners failed to prove that the partnership terminated, that an exchange was made in 1974, or, if an exchange was made, the amount of petitioners' or the partnership's basis in the exchanged assets. Lewis testified at trial that he did not remember when Joyce Lansford left the partnership and that Buford Terrell, the other partner, probably left in 1976. Any exchange made because of the termination of the partnership could not therefore have been consummated until 1976, when Lewis' last partner left the firm. Nevertheless, assuming an exchange occurred in 1974, petitioners still have failed to establish that they are entitled to the increased depreciation deductions. They did not report any gain from the purported exchange on their income tax return for 1974. They apparently considered the transaction a nontaxable, likekind exchange under section 1031. In such an exchange, the basis of the exchanged properties must be determined. Moreover, petitioners failed to present any evidence as to what property was exchanged for the furnishings or the *317 basis of that property. It is our opinion that petitioners have failed to substantiate the right to the stepped-up basis. 4. "Worthless Business" Deduction Issue
In 1974, Lewis paid $5,000 to Martha and David Hobbs for a bookkeeping business referred to as the service. Lewis understood that he would receive in exchange for the $5,000 the ten sets of accounting books maintained by the service, numerous files containing former income tax returns of the service's clients, and Martha's assistance in operating the business. In actuality, Lewis received only the tax return files. Lewis earned $941 in 1974 from the preparation of tax returns for the service's former clients. In 1975, Lewis employed Karen Whitt, who then took over the business. No evidence was presented as to how much the business earned in 1975. On schedule C, relating to Lewis' law practice, of their 1974 income tax return, petitioners claimed, presumably pursuant to section 165(c)(1), a $5,000 deduction for "tax business purchase that was worthless." We agree with respondent that the deduction is not authorized in either 1974 or 1975. Section 1.165-1(b), Income Tax Regs., provides that in order *318 for a loss to be allowable as a deduction under section 165, the "loss must be evidenced by closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year." Here, petitioners have not established that an identifiable event fixing the loss occurred in 1974. From preparation of income tax returns of the service's former clients, Lewis earned $941 in 1974, and, with the help of an assistant, also apparently had earnings in 1975. This is evidence that Lewis was receiving continued returns from his investment. There were no "closed and completed transactions" in 1974 and "no identifiable events" in that year to show that a loss was sustained. Sec. 1.165-1(b), Income Tax Regs.
5. "Honorarium" Issue
For approximately 8 years prior to and including 1974, Dahlia was engaged on a part-time basis in editing certain works of Washington Irving which were to be published as part of the Irving project. For her labors she was to receive ten free copies of the volume she edited and one copy of other volumes of the project. [2]/ During those 8 years, Dahlia incurred expenses for which she received partial reimbursement. Petitioners *319 deducted on their income tax returns for the years in issue most of the unreimbursed expenses. In 1974, Dahlia received an "honorarium" in the amount of $2,500 from the association, of which amount petitioners reported only $1,000 as gross receipts on their income tax return for that year. Petitioners contend that the remaining $1,500 is properly excludable pursuant to section 117 as a "research grant" in the nature of a fellowship. We disagree. Section 1.117-4(c), Income Tax Regs., provides that payments will not be considered fellowship grants for purposes of section 117 if they are made to enable an individual "to pursue studies or research primarily for the benefit of the grantor." In Bingler v. Johnson,394 U.S. 741, 751 (1969), the Supreme Court upheld those regulations as being-- prima facie proper, comporting *320 as they do with the ordinary understanding of * * * "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial quidproquo from the recipients. Dahlia performed significant services on the Irving project for which, pursuant to the contracts she entered into with the publishers, she was to receive only ten free copies of the volume she was editing and one copy of the other 28 volumes of the work. We think it is clear that the $2,500 payment was made primarily to enable Dahlia to pursue the research required of her. Although the publisher, G. K. Hall & Co., will receive the economic benefits from the Irving project, Dahlia's research will also directly benefit the association, the payor of the $2,500, since one of its purposes is to further the publication of accurate, definitive editions of works in American literature. 6. Gross Receipts Issue
The accounting records for Lewis' law practice as well as petitioners' income tax return for 1975 indicated that Lewis' law practice had gross receipts in the amount of $29,989.94. Employing the bank deposits method of income reconstruction, respondent determined *321 that gross receipts from the law practice totaled $36,849.63 and that petitioners had unreported taxable income of $6,859.69. We agree with respondent's determination. Lewis made numerous deposits in his bank account, totaling $64,957.15 in 1975, and many of these deposits were not explained by his books or records. Since Lewis was actively engaged in his law practice, from which he had earnings, respondent was justified in using an indirect method of income reconstruction to test the accuracy of petitioners' income tax returns and to redetermine their taxable income. See Doll v. Glenn,231 F.2d 186, 188 (6th Cir. 1956); Harper v. Commissioner,54 T.C. 1121, 1129 (1970). The bank deposits method used by respondent to reconstruct petitioners' income has long been sanctioned by this Court. Estate of Mason v. Commissioner,64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Jones v. Commissioner,29 T.C. 601, 613-614 (1957). Under that method, though not conclusive, bank deposits are prima facie evidence of income. To show that their bank deposits were not currently taxable income, petitioners *322 had the burden of proving that the deposits were derived from some non-taxable source. Estate of Mason v. Commissioner,64 T.C. at 657. Petitioners failed to carry their burden and we must therefore uphold respondent's determination. Petitioners contend that respondent's determination was in error primarily because it failed to give them credit for the receipt of $5,350 as repayment of a loan which Lewis made to Donald Floyd. Petitioners maintain they borrowed that amount from a bank in November or December 1974, loaned it at that time to Floyd, and Floyd repaid them on February 4, 1975. Although petitioners have presented a plausible scenario, they have no documentation or other substantiation for any of the transactions. We are not convinced by their explanation. Petitioners also contend that respondent's determination with regard to $1,509.69, the amount by which the determination exceeds the purported loan, was in error. However at trial, in explaining the various deposits to his bank account made during 1975, Lewis was able to identify only approximately $26,000, including the $5,350, as being nontaxable. There remains approximately $9,000, an amount *323 in excess of respondent's determination, of unexplained deposits.
7. Section 6653(a) Issue
In addition to the deductions at issue in this case, petitioners' 1973, 1974, and 1975 income tax returns were replete with exaggerated and unfounded claims of deductions, see Beus v. Commissioner,261 F.2d 176, 181 (9th Cir. 1958), affg. 28 T.C. 1133 (1957), which were not due to the honest misunderstanding of the facts or the law, Wesley Heat Treating Co. v. Commissioner,30 T.C. 10, 26 (1958), affd. 267 F.2d 853 (7th Cir. 1959), and which petitioners readily conceded at trial. On his 1975 income tax return, for example, they deducted a sum which was described as a "Federal Cost of Living Raise." As a tax lawyer, Lewis must have known there was no basis for such a deduction. We can only conclude that such deduction as well as other errors in the returns were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). Petitioners have the burden of proof on this addition-to-tax issue, and they did not show that they exercised reasonable care in preparing their tax returns. *324 This is especially true when the fact that Lewis prepared income tax returns in his law practice is taken into account. We are compelled to decide the issue for respondent. To reflect the above and concessions made by both parties, Decision will be entered under Rule 155.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. /↩ Dahlia testified at trial that she was to receive ten copies of the book she edited plus one copy of the other 28 volumes in the Irving project. However, the contract she signed with G. K. Hall & Co. provides that she would receive only the ten copies. We do not know what she will actually receive once the Irving project is completed.