GARY L. AND ELLEN B. ALLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket No. 7244-93
United States Tax Court
T.C. Memo 1994-165; 1994 Tax Ct. Memo LEXIS 166; 67 T.C.M. (CCH) 2696; April 18, 1994, Filed *166 Decision will be entered for petitioner. Gary L. Allen, pro se. For respondent: Edith F. Moates. DINAN
DINAN
MEMORANDUM OPINION DINAN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency in petitioners' Federal income tax in the amount of $ 493 for the year 1988. The issues for decision are: (1) Whether petitioners are entitled to an abandonment loss relating to the confiscation of business property by an Indian tribe; and (2), if petitioners are entitled to a loss, whether the loss is a capital loss or an ordinary loss. [2]
*167 Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Petitioners resided in Tulsa, Oklahoma, on the date the petition was filed in this case. Petitioners filed a joint Federal income tax return for the year 1988 with the IRS on or about August 31, 1989, following a timely application for an extension. Neither petitioner is an American Indian. All future references to petitioner refer to petitioner Gary Allen. Petitioner is a certified public accountant. Petitioner's spouse is a school teacher. During most of 1987, petitioner worked as an accountant for the United Keetowah Band of Cherokees which operated an enterprise known as Horseshoe Bend Bingo. During 1987, a Mr. Bingham, a non-Indian, was operating the Hominy Village Bingo (hereinafter HVB) located in Hominy, Oklahoma, on the Hominy Indian Reservation under a management contract with the Hominy Indian Village Committee (hereinafter the Committee). The Committee owned the hall housing HVB and the land on which HVB was located, while Mr. Bingham owned the operating assets of HVB. In late 1987, petitioner and Mr. Bingham entered *168 into negotiations for the sale of the operating assets of HVB by Mr. Bingham to petitioner. In early October of 1987, Mr. Bingham and petitioner inventoried all the operating assets of HVB in order to determine their fair market value. On October 19, 1987, as evidenced by a signed receipt, petitioner purchased the operating assets of HVB from Mr. Bingham for $ 18,000. Petitioner paid Mr. Bingham with approximately $ 12,700 borrowed from his daughter, $ 3,900 borrowed from his brother, and the remainder from personal savings. Petitioner signed demand, interest-bearing notes for the borrowed money and gave his brother and daughter a security interest in the property purchased. The security interest was filed with the State in Tulsa, Oklahoma. On October 20, 1987, petitioner signed a management contract with the Committee. The contract authorized petitioner to operate HVB four nights per week for 156 consecutive weeks. Petitioner was obligated to pay the Committee $ 1,500 each week that HVB was operated. Once the contract was signed, petitioner took over operation of HVB. The management contract, however, required approval by the Bureau of Indian Affairs (hereinafter the Bureau). *169 At the time the contract was signed, the Committee assured petitioner that they would seek the necessary approval of the contract by the Bureau. In December of 1987, after operating HVB for nearly 2 months, petitioner learned from the Committee that they had not sought approval of the management contract by the Bureau, and did not plan to seek approval of the management contract by the Bureau. Without approval of the management contract, and with no prospect of obtaining approval, in late December of 1987, petitioner closed HVB and left the reservation. In January of 1988, petitioner returned to HVB to recover HVB's operating assets -- his property. The Committee refused to allow petitioner or his representatives to reclaim HVB's operating assets or even to enter HVB. Petitioner made no further attempts to reclaim his property. Petitioner considered that any such attempts would only be futile and expensive. Without income from HVB, petitioner was unable to repay the amounts that he had borrowed, and he was forced to default on the loans to his brother and daughter. In 1990, petitioner's brother and daughter, acting in their capacity as secured creditors, retained the services *170 of Dale F. McDaniel, an attorney, in unsuccessful attempts to obtain the property or damages from the Committee. Mr. McDaniel first filed a lawsuit against the Committee in a State court in Osage County, Oklahoma, which was dismissed for lack of jurisdiction. Mr. McDaniel next filed another lawsuit in Osage County against the Committee members that were signatories to the contract in their individual capacity, which was also dismissed for lack of jurisdiction. Mr. McDaniel then filed a lawsuit in the United States District Court for the Northern District of Oklahoma. That case was also dismissed for lack of jurisdiction. Finally, Mr. McDaniel contacted the Bureau of Indian Affairs, only to be informed that there were no tribal courts available to hear their claim. On petitioners' 1987 Federal income tax return, they claimed a capital loss relating to the confiscation of their property by the Committee in the amount of $ 16,884 (petitioner's basis in the assets) and an operating loss in the amount of $ 15,355. As a result of capital loss limitations, petitioners only deducted $ 3,000 of their claimed capital loss on their 1987 return, carrying the balance of the capital loss *171 forward. [3]Sec. 165(f); sec. 1211(b). The year 1987 is not before this Court. On petitioners' 1988 Federal income tax, again due to capital loss limitations, they only deducted a $ 3,000 capital loss, carrying the balance of the capital loss forward. Respondent disallowed the capital loss deduction contending that petitioners had not established that the amount claimed on their return was a loss, or that it was sustained by them, and, in the alternative, that such a loss occurred in later years. Deductions are strictly a matter of legislative grace, and taxpayers bear the burden of proving they are entitled to any deduction claimed on their return. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 165(a) provides that taxpayers are allowed a deduction for "a loss sustained during a taxable year not compensated *172 for by insurance or otherwise". In the case of an individual taxpayer, the deduction is limited to certain types of losses, one of which is a loss incurred in a trade or business. Sec. 165(c)(1). It is uncontested that petitioner was in the trade or business of operating a legal gambling enterprise for a profit during the year 1987. A loss may arise from a permanent withdrawal of property used in a trade or business or for the production of income. Sec. 1.165-2(c), Income Tax Regs.Section 1.165-2(c), Income Tax Regs., directs us to section 1.167(a)-8, Income Tax Regs., which provides that withdrawal of depreciable property used in a trade or business may be accomplished by several methods. See Estate of Myers v. Commissioner, T.C. Memo. 1981-384. Withdrawal may be accomplished by sale, exchange, retirement, or "actual physical abandonment". Sec. 1.167(a)-8(a), Income Tax Regs. Where an asset or assets is (are) withdrawn by actual physical abandonment, the loss will be recognized, measured by the amount of the adjusted basis of the asset abandoned at the time of abandonment. Sec. 1.167(a)-(8)(a)(4), Income Tax Regs.
In order to be entitled *173 to an abandonment loss, the taxpayer must show: (1) An intention on part of the owner to abandon the asset; and (2) an affirmative act of abandonment. Citron v. Commissioner, 97 T.C. 200, 208 (1991). The mere intention to abandon is not, nor is non-use of property alone, sufficient to accomplish abandonment. Beus v. Commissioner, 261 F.2d 176, 180 (9th Cir. 1958), affg. 28 T.C. 1133 (1957). In determining a taxpayer's intent to abandon, the subjective judgment of the taxpayer is entitled to great weight, and the court is not justified in substituting its business judgment for that of the taxpayer. A. J. Industries, Inc. v. United States, 503 F.2d 660, 670 (9th Cir. 1974); Middleton v. Commissioner, 77 T.C. 310 (1981), affd. 693 F.2d 124 (11th Cir. 1982). Based on the record, we conclude that petitioners are entitled to an abandonment loss in the year 1988. On October 17, 1987, petitioner purchased the operating assets of HVB, and on October 20, 1987, petitioner signed a contract, subject to approval *174 by the Bureau, with the Committee authorizing him to operate HVB for 156 consecutive weeks. Petitioner immediately began the operation of HVB. Nearly 2 months later, after learning that such approval by the Bureau would not be forthcoming, petitioner closed HVB and left the reservation. In 1988, petitioner returned to the HVB to reclaim his property -- HVB's operating assets, but the Committee refused to allow him to do so. Petitioner made no further attempts to reclaim his property. Petitioner, who thoroughly understood the legal and practical difficulties faced by a non-Indian pursuing a lawsuit against an Indian tribe, especially regarding property located on Indian land, concluded that any such attempt to recover his property through legal means would be extremely costly and would most likely be ultimately useless. In short, petitioner abandoned the property in 1988. The overt act of abandonment was petitioner's conclusion not to engage in costly litigation. Petitioner's testimony is entirely consistent with the documentary evidence presented. Petitioner presented a signed receipt stating that he paid $ 18,000 for the equipment. Petitioner provided his daughter and brother *175 with demand, interest-bearing notes and a security interest in the assets purchased. Respondent introduced into evidence the management agreement signed by petitioner and members of the Committee in their professional capacity. Finally, respondent introduced into evidence the financial records of the business, which further demonstrate the value of the assets abandoned. As for respondent's contention that, if there was such a loss, it occurred in years following 1988, we disagree. Petitioner stated that once he was not allowed by the Committee to retrieve his property in January of 1988, he considered the property unrecoverable. Petitioner's pragmatic decision to abandon his property, does not preclude the deduction. [4]Ramos v. Commissioner, T.C. Memo. 1981-473. We will not require petitioner to do what would be an exercise in futility. *176 We note that it was not petitioner that instituted the lawsuits mentioned, supra, but the secured creditors, his brother and daughter. In our view, the lawsuits filed by petitioners' brother and daughter, only served to verify petitioner's original belief that the property was unrecoverable through legal action in 1988 once confiscated. Having concluded that petitioner is entitled to an abandonment loss for the year 1988, we turn to the issue of whether the loss is a capital loss as claimed or an ordinary loss. As stated above, section 165(a) provides the general rule that taxpayers may deduct "any loss sustained during the taxable year not compensated for by insurance or otherwise." Section 165(a) is limited by 165(f) which provides that "Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212." If taxpayer's loss is a capital loss, the amount of capital loss allowable for the taxable year is the lower of $ 3,000 or the excess of capital loss over capital gains. Secs. 165(f), 1211(b), 1212(b). An abandonment loss, however, is treated as an ordinary loss, unless it arises from the sale or exchange of a capital *177 asset, in which case it is treated as a capital loss. The term "capital asset", by definition, does not include property used in a trade or business of a character which is subject to the allowance for depreciation provided for in section 167. Sec. 1221(2). The assets confiscated by the Committee and subsequently abandoned were assets used in petitioner's trade or business. [5] They were not capital assets, and abandonment of such assets does not give rise to a capital loss. See sec. 1.167(a)-8, Income Tax Regs. Accordingly, petitioners are entitled to an ordinary loss for the abandonment of their business property in the year of abandonment, 1988. To reflect the foregoing, Decision will be entered for petitioner. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Due solely to the increase in petitioners' adjusted gross income resulting from the disallowance of petitioners' claimed capital loss, respondent reduced petitioners' Schedule A deductions for medical expenses and miscellaneous deductions.↩
3. The balance of the capital loss carried forward was $ 13,884.↩
4. The case at bar is analogous to Citron v. Commissioner, 97 T.C. 200 (1991). In Citron↩, taxpayer became a limited partner in a partnership formed to produce a movie. The executive producer, after filming the movie, refused to return the film negative to the partnership. Rather than enter into a costly and protracted legal battle, taxpayer decided to abandon his partnership interest.
5. Petitioner claimed depreciation in the amount of $ 1,500 related to the operation of HVB.↩